UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                :
ROBERT LUIZ MARTINEZ           :
          a/k/a BERK,          :
                                :          Civil Action No.
          Petitioner,          :          05-0461 (JBS)
                                :
          v.                   :          **O P I N I O N**
                                :
JOHN NASH, WARDEN,             :
                                :
          Respondent.          :
_____:

**APPEARANCES:**

    Robert Luiz Martinez, Petitioner pro se
    #11493-004
    FCI Fort Dix
    P.O. Box 1000
    Fort Dix, NJ  08640

    Christopher J. Christie, United States Attorney
    Irene E. Dowdy, Assistant United States Attorney
    402 East State Street
    Trenton, New Jersey 08608
        Attorney for Respondent


**SIMANDLE, District Judge:**

    Petitioner ROBERT LUIZ MARTINEZ a/k/a BERK (hereinafter

"Petitioner") currently confined at the Federal Correctional

Institution (hereinafter "F.C.I."), Fort Dix, New Jersey, filed

an application for a Writ of Habeas Corpus, pursuant to 28 U.S.C.

§ 2241 (hereinafter "Petition"), asserting that his parole

eligibility date has been incorrectly determined by the Federal

Bureau of Prisons.  After Respondent submitted Respondent's

Answer to the Petition (hereinafter "Answer") and pertinent

record, Petitioner submitted his traverse (hereinafter "Traverse"), to which Respondent responded with Respondent's Reply (hereinafter "Reply").[1]  Having thoroughly reviewed all documents submitted, the Court remands this matter to the Federal Bureau of Prisons (hereinafter "BOP")  so the BOP would recalculate the date of Petitioner's parole eligibility in the fashion not inconsistent with the instant Opinion.

## I.  <u>BACKGROUND</u>

The issue at bar, concerning calculation of Petitioner's parole eligibility under a series of alternating parolable and non-parolable federal sentences, appears to be a novel matter not squarely addressed by any federal court.  Since the case at bar, involving such series of alternating sentences, is further complicated by a pre-existing denial of parole with respect to one of Petitioner's sentences, the Court expressly limits its findings to the highly unusual situation presented by Petitioner's case.

---

[1] On the grounds procedurally unclear to this Court, Petitioner, prior to submission of his "formal" Traverse, filed his "Objections to Answer to Writ," to which Respondent replied with Respondent's "Response to Objections."  <u>See</u> Docket Entries Nos. 12 and 13.

**A.   Factual Framework**

The facts at issue involve five distinct sentences, all of which were imposed under the United States Code; but only the first four sentences are of consequence to the issue at bar.  <u>See</u> Pet. at 5; Ans. at 5-6.  The first sentence, imposed on May 20, 1983, entailed a *parolable* five year term.  <u>See</u> <u>id.</u>  The second sentence, imposed on February 22, 1985, entailed a *parolable* three year term to be served *consecutively* with the first sentence.   <u>See</u> <u>id.</u>  The third sentence, imposed on March 27, 1987, entailed a *non-parolable* thirty-five year term to be served *consecutively* with the first and second sentences.   <u>See</u> <u>id.</u> The fourth sentence, imposed also on March 27, 1987, entailed a *parolable* five year term to be served *consecutively* with the first, second and third sentences.   <u>See</u> <u>id.</u>  Finally, the fifth sentence, imposed on April 15, 1997, entailed a parolable one year term to be served *concurrently* with the sentence Petitioner was then serving; this sentence is of no consequence to the issue at bar due to its concurrent nature and the term shorter than that being served by Petitioner in 1997.  <u>See</u> <u>id</u>

Thus far, the United States Parole Commission (hereinafter "USPC") considered Petitioner for parole on only one occasion, that is, on November 23, 1983, when the USPC ordered Petitioner to serve his first (parolable) sentence (of 5 years) to the

expiration.[2]  <u>See</u> Ans. at 7, Ex. USPC-1.  In 1986, after

Petitioner's second parolable sentence was imposed, the USPC

opened Petitioner's case in order to schedule a hearing with

regard to Petitioner's second sentence but, upon learning about

the imposition of Petitioner's third and fourth sentences, the

USPC voided the opening of Petitioner's case until December of

2007; the December of 2007 time-frame was selected by the USPC on

the basis of BOP's calculations with respect to Petitioner's

parole eligibility.  <u>See</u> <u>id.</u> Exs. USPC-2 and USPC-3.


**B.   Respondent's Calculation Model**

Respondent's Answer sets forth the formula employed by the

BOP in calculation of Petitioner's parole eligibility.[3]  If the

_____

   [2] Petitioner's appeal of that decision (hereinafter "Appeal
of First Denial"), <u>see</u> Objections to Ans. and Response, has no
bearing on the issues at bar since the USPC's decision was
affirmed by the Regional Commissioner, <u>see</u> Response at 2, Ex.
USPC-A, and -- following a remand and reaffirmation accompanied
by an upward re-rating of Petitioner's offense severity level --
by the National Appeals Board.  <u>Id.</u> at 3-4, Exs. USPC-C and USPC-
D.  Hence, USPC's denial of parole to Petitioner with respect to
Petitioner's first (parolable) sentence (of 5 years) is
conclusive for the purposes of all calculations contained in this
Opinion.

   [3] The Answer (1) examines in great detail the technical
aspects of calculating parole eligibility for *any* given sentence
(explaining how one is to arrive to the date when the computation
begins, or to calculate the length of sentence, jail credits,
expiration of full term, statutory good time, extra good time
credits and mandatory release date), <u>see</u> Ans. at 9-13; and (2)
sets forth the mathematics of calculation applied by the BOP to
Petitioner.  <u>See</u> <u>id.</u> at 14-16.  While finding Respondent's
factual statements outlining the mode of calculation employed by

mathematics of various adjustments, such as jail time or good time credits, etc. (which are not in dispute), inconsequential to the issue at bar, are factored out, it appears that the BOP aggregated Petitioner's four consecutive sentences into the total of forty-eight years, that is, the sum of the first four sentences added together.  See Ans. at 13.  Then, for the purposes of parole eligibility, the BOP sorted these forty-eight years into three temporal parcels: (a) "the initial aggregated 8 year portion, from which [Petitioner] was not paroled . . . and which has expired," that is, the first sentence of 5 years plus the second sentence of 3 years; (b) "the 35 year non-parolable portion . . . which [Petitioner] is presently serving" resulting from his third sentence; and (c) "the remaining . . . five year[s]" resulting from the fourth sentence.  Id. at 14.  Adding the first parcel of 8 years to the second parcel of 35 years, the BOP arrived to the total of 43 years, hence setting Petitioner's parole eligibility date for the sum of parcels one and two at 43 years, as adjusted, from the first day of Petitioner's incarceration.[4]  Id. at 15.  Then, crediting part of the time

_____

the BOP *with respect to Petitioner* helpful, this Court notes that Respondent failed to address any legal aspects of the actual issue at bar (namely, the proper treatment of a series of alternated parolable and non-parolable sentences) other than discussing two cases relied upon by Petitioner.  See id. at 17-25.

    [4] All calculation models provided by the Court in this Opinion expressly exclude jail time, good time and extra good

that Petitioner already served under the first parcel against the minimum time that Petitioner should serve under the third parcel (consisting of the remaining fourth sentence of 5 years), the BOP arrived at the very same parole eligibility date, that is, 43 years, as adjusted, from the first day of Petitioner's incarceration.[5] <u>Id.</u> at 15-16.

Significantly, while the BOP styled the first parcel as "the initial aggregated 8 year portion [being the sum of 5 and 3

---

time credits undisputed in this case; these adjustments are left for the agencies responsible for such calculations.  For the purposes of this Opinion, this Court merely uses the term "as adjusted" to indicate that such adjustments are due, that is, unless the Court expressly states otherwise.

[5] Specifically, Respondent asserts as follows:

If that five year sentence were standing alone, [Petitioner] would be eligible for parole consideration after serving [the statutory minimum equal to] one-third of that sentence, <u>i.e.</u>, after 20 months . . . . However, . . . the BOP has applied to that parole eligibility computation the time that [Petitioner] spent in custody  between the statutory minimum [applicable to the aggregated sum of first sentence of 5 years and second sentence of 3 years] equal to one-third [of this 8 year sum, that is, 32 months] and the mandatory release [equal to two-thirds of these very 8 years, that is, 64 months].  Since that [difference between 64 and 32 months] exceeds the 20 months, [Petitioner] will become eligible for parole consideration . . . immediately upon the . . . release date for his [preceding] sentence[s].

Ans. at 16.  The Court notes that Respondent's own calculations (corrected by the Court in the bracketed language above) do not support Respondent's own formula, since Respondent asserts that the difference between 2/3 of eight years and 1/3 of eight years still equals to 2/3 of eight years (or 64 months), which is incorrect.

years], from which [Petitioner] was not paroled . . . and which
has expired," id. at 14, nothing in Respondent's Answer indicates
that Petitioner was *actually* denied parole with respect to the
*entire* period of 8 years.  Rather, Respondent's Answer and
supporting record indicate that: (a) Petitioner was expressly
denied parole only with respect to his first (parolable) sentence
(of 5 years), see id. at 7; Response at 1-2; (b) the USPC did
*not* reach any decision one way or the other with respect to
Petitioner's second (parolable) sentence (of 3 years), see Ans.
at 7-9; but (c) the BOP, on its own volition, presumed that
Petitioner was *not* paroled from his *second* parolable sentence.
See Ans. at 14-15.

## C.   **Petitioner's Challenge**

While the language used by Petitioner to set forth
Petitioner's claim merely asserts that Petitioner had his
procedural due process rights violated by being deprived of
"interim parole hearings," see, e.g., Pet. at 12, Respondent
discerns--and this Court agrees--that the gist of Petitioner's
claim, subtly scattered among pages of Petitioner's multiple
submissions, has little relevance to violation of Petitioner's
due process rights.[6]  Rather, it appears that Petitioner is

---

[6] Indeed, the record, as well as Petitioner's own
submissions, demonstrate the full process given to Petitioner
administratively.  See, e.g., Pet. at 6-10.  While Petitioner did
not get his sentences recalculated in the fashion that Petitioner

challenging BOP's calculation of the date of Petitioner's parole eligibility, asserting that his series of alternating parolable and non-parolable sentences makes Petitioner parole eligible much sooner than 43 years after the first day of Petitioner's incarceration.  <u>See</u> Pet. at 6, 17-19 (setting forth the period of 18 years and 5 months); Traverse at 2.  Specifically, Petitioner asserts the following:

1.   "Parole Commission's own regulations . . . require that consecutive sentences be aggregated [and these multiple sentences should] be [treated as] one term."  Pet. at 14. Therefore, all Petitioner's parolable and non-parolable sentences should be aggregated into one sentence.   <u>See id.</u>

2.   Once consecutive sentences are so aggregated, "[t]he U.S. Parole Manual [m]andates that the non-parolable portion of the [aggregated] sentence be served [f]irst."  <u>Id.</u> at 6. Therefore, Petitioner's third sentence of 35 years, as adjusted, should be backdated to start at the first day of Petitioner's incarceration.  <u>See id.</u>

3.   Upon expiration of his non-parolable portion of the aggregated sentence, an inmate "[s]hould be eligible to see

_____

desired, this sole fact does not mean that Petitioner was deprived of due process.  <u>See</u>, <u>e.g.</u>, <u>Coades v. Kane</u>, 1992 U.S. Dist. LEXIS 8844 (E.D. Pa. May 22, 1992) (an inmate was not denied due process merely as because an unfavorable decision was reached by a prison hearing examiner since an unfavorable decision <u>per se</u> is not the same as a denial of due process).

the [USPC] and obtain release date" for the remaining
parolable portion of his sentence.  Id.  Therefore,
Petitioner should be eligible for a parole hearing after 35
years, as adjusted, from the first day of Petitioner's
incarceration.[7]    See id.

4.    "Since parolable and non-parolable sentences are aggregated
[into one sentence], the [USPC should] credit [the period
the inmate served under his non-parolable portion] to the
parolable" portion. Id. at 6.  Therefore, Petitioner's non-
parolable 35 years, as adjusted, should be credited against
the sum of Petitioner's parolable sentences.  See id. at 6,
15-18 (on the basis of Petitioner's reading of Chatman-Bey
v. Meese, 797 F.2d 987 (D.C. App. 1986); Thomas v. Brennan,
961 F.2d 612 (7th Cir.1992); and Lyons v. Mendez, 303 F.3d
285 (3d Cir. 2002)).

---

[7] Somehow, and in conflict with his own contentions that (a)
all his sentences should be aggregated into one, see Pet. at 14,
and (2) Petitioner should be eligible for one parole hearing
only, right after 35 years (adjusted down by Petitioner to 18
years and 5 months), see id. at 17, Petitioner simultaneously
maintains that he is entitled to three separate parole hearings,
specifically, one with respect to his first (parolable but
parole-denied) sentence, see Objections to Ans., another one with
respect to his second (parolable) sentence (of 3 years), which
Petitioner argues is "now 20 years overdue," and the last one
with respect to Petitioner's fourth (parolable) sentence (of 5
years), which Petitioner qualifies as "now 18 years overdue."
See Pet. at 11.

## II.  **STANDARD OF REVIEW**

A pro se pleading is held to less stringent standards than
more formal pleadings drafted by lawyers.  <u>Estelle v. Gamble</u>, 429
U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).
A pro se habeas petition and any supporting submissions must be
construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce
v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney
General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v.
Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399
U.S. 912 (1970).

In the case at bar, Petitioner is seeking a writ of habeas
corpus and review of an agency action.  As they relate to habeas
relief, this Court has jurisdiction to consider Petitioner's
claims under 28 U.S.C. § 2241, the only statute that confers
habeas jurisdiction to hear the petition of a federal prisoner
who is challenging not the validity but the execution of his
sentence.  A habeas petition filed in the district where the
petitioner is confined provides a remedy to challenge the effect
of events subsequent to imposition of his sentence.  <u>See</u> <u>Gomori
v. Arnold</u>, 533 F.2d 871, 874-75 (3d Cir. 1976).

Examining such a challenge, the Court is required to "hold
unlawful and set aside agency actions, findings, and conclusions
found to be . . . not in accordance with law."  5 U.S.C. §
706(2)(A).  However, "the Court is not empowered to substitute

10

its judgment for that of the agency." <u>Citizens to Preserve</u> <u>Overton Park v. Volpe</u>, 401 U.S. 402, 416 (1971).  Therefore, this Court must: (1) determine whether the calculation of Petitioner's parole eligibility date was a permissible construction and/or application of the statutory regime; and (2) uphold the agency ruling if such construction was permissible.  <u>Chevron U.S.A. Inc.</u> <u>v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984) (outlining the two-step analysis to determine the validity of an agency regulation and of application(s) of such regulation).

## III.  **DISCUSSION**

This Court finds it helpful to first outline the rudimentary principles ensuing from pertinent statutory provisions, then address the shortcomings contained in the arguments set forth by both Petitioner and Respondent, and conclude the discussion by setting forth a detailed calculation model which this Court finds to be a proper interpretation of the pertinent statutory mandates.

Parole eligibility for pre-Sentencing-Guidelines federal sentences is governed by 18 U.S.C. § 4205(a) (1982),[8] under which

---

[8] Although Congress repealed § 4205, effective November 1, 1987, the provision remains applicable to Petitioner's sentence, which was imposed prior to implementation of the Sentencing Guidelines. <u>See</u> Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987, §§ 218(a)(5), 235(b)(1). Because Petitioner was sentenced before the Guidelines became law, section 4205 still governs his case.

a prisoner is eligible for parole after serving one-third of a
sentence of 30 years or less, or 10 years of a sentence greater
than 30 years (hereinafter the "One-third Rule"), "except to the
extent otherwise provided by law."  The "extent otherwise
provided by law" phrase indicates, inter alia, a non-parolable
sentence, see 18 U.S.C. § 4205(h) ("Nothing in this chapter shall
be construed to provide that any prisoner shall be eligible for
release on parole if such prisoner is ineligible for such release
under any other provision of law"); see also, Rodger v. White,
1990 U.S. App. LEXIS 11774, at *8 (6th Cir. July 11, 1990),
hence, making the One-third Rule of § 4205(a) inapplicable to
non-parolable sentences.  See id.      Furthermore, under §
3584(c), "multiple terms of imprisonment . . . shall be treated
for administrative purposes as a single, aggregate term of
imprisonment."  18 U.S.C. § 3584(c).  Section 3584 "does not
affect the maximum term authorized, [it] merely instructs a
sentencing court whether to run 'multiple terms of imprisonment'
consecutively or concurrently; it says nothing about how the
individual term is to be calculated."  United States v. LaBonte,
520 U.S. 751, 758 (1997).  Since, more often than not,
aggregation involves either a series of consecutive parolable-
only (or non-parolable-only) sentences, the process of
aggregation is relatively simple because, in the parolable-only
scenario, it mandates application of the One-third Rule to the

sum of sentences, as adjusted, while, in the non-parolable-only scenario, it yields the total equal merely to the sum of sentences, as adjusted.[9]

Occasionally, however, a prisoner is sentenced to both parolable and non-parolable sentences.  In such a circumstance, despite the differing provisions as to parole, the BOP habitually aggregates these consecutive sentences; this arrangement has favorable aspects for an inmate in terms of allowable "good time credits."  See Traslavina v. Gaines, 2004 U.S. App. LEXIS 2212, §at *2-3 (3d Cir. Jan. 21, 2004).  Since, more often than not, such series of consecutive parolable and non-parolable sentences involves two sentences only, one parolable and one not (or two groups of sentences, for instance, first group consisting of parolable-only sentences while the second group consisting of non-parolable-only), rather than an alternation of parolable/non-parolable/parolable sentences, the process of aggregation--as well as the related process of determination of the date of parole eligibility--remains, mathematically, a relatively simple one, even though it entails a bit of legal challenge.  The legal consequence was examined in United States v. Luskin, 16 Fed. Appx. 255 (4th Cir. 2001), the case where  Petitioner was

_____

[9] The scope of the Court's review in this Opinion is limited solely to multiple *consecutive* sentences (since presence or absence of concurrently running shorter sentences has no bearing on the aggregated result).  See, e.g., United States v. Caldwell, 358 F.3d 138 (1st Cir. 2004).

13

sentenced to serve, first, a parolable term of 20 years, and then
non-parolable 15 years.  <u>Id.</u> at 258.  While the federal policy at
the time of sentencing was that non-parolable sentences had to be
served prior to parolable, the policy was later changed to
provide, retroactively, that sentences were to be served in the
sequence contained in the judgment of conviction.  <u>Id.</u> at 258-59.
Addressing the effect of that the change in policy, the <u>Luskin</u>
court illustrated as follows:

> [If] the BOP . . . required [petitioner] to serve the
> non-parolable sentence first, he had to serve 15 years
> before he started serving the parolable term.
> [Petitioner] received good time credits on the
> non-parolable sentence that reduced his sentence by
> five years.  Thus, [petitioner] only had to serve 10
> years of the non-parolable sentence.  After he served
> the 10 years, [petitioner] had to serve one-third of
> the parolable term (roughly six years) before he was
> eligible for parole.  [Petitioner] therefore had to
> serve a total of 16 years before he became eligible for
> parole . . . . [However, if] the BOP required him to
> serve the parolable sentence first, [petitioner] became
> eligible for parole [consideration] after serving only
> one-third of his parolable sentence.  [Petitioner]
> therefore became eligible for parole after serving
> roughly six years [rather than 16, since the USPC could
> make no determination with regard to petitioner's
> already fixed non-parolable sentence].

<u>Id.</u> at 259, n. 2 and 3.

It is, however, paramount to highlight that, if an inmate
such as petitioner in <u>Luskin</u> is actually paroled on a parolable
sentence, that parole does not release the inmate into society;
rather it "releases" the inmate back into federal custody under

14

the inmate's next (non-parolable) sentence.  See id.  As the
Third Circuit clarified,

> [t]he BOP properly conclude[s] that, after [being]
> parole[d] on [a parolable] sentence . . . , the [inmate
> is] required to serve the non-parolable sentence [in
> its entirety, as adjusted].  To have done otherwise
> would have violated the sentencing court's explicit
> order that the non-parolable term be served
> consecutively to the parolable sentence.

Traslavina, 2004 U.S. App. LEXIS 2212, at *5, 8 (citing, in
addition, a sentence monitoring entry reading that, after
expiration of one-third of his parolable sentence, "prisoner was
eligible . . . to be paroled [solely] 'on paper' to [his] next .
. . non-parolable sentence").  Hence, while the point in time
when the inmate is to be released into society is not--and should
not be--affected by the order in which the inmate serves his
parolable and non-parolable sentences, see LaBonte, 520 U.S. at
758, the time when the inmate is to have his parole hearing could
be affected.  See Luskin, 16 Fed. Appx. at 259.

     Having established these basic principles, this Court now
turns to contentions set forth by Petitioner.[10]  Petitioner's
first error is in equating Petitioner's contention that his "non-
parolable *portion of the aggregated sentence* should be served

_____

     [10] The Court, however, need not address Petitioner's initial
claim that all his sentences should be aggregated into one since
it appears quite certain from the record and Respondent's Answer
that the BOP long granted Petitioner's wish by aggregating all
his sentences into the total of 48 years, as adjusted.  See Ans.
at 13.

first," see Pet. at 6, with Petitioner's other contention that "his non-parolable *sentence* of 35 years should be deemed served first."  See id.  While this Court upholds the former proposition, subject to this Court's clarification as to what constitutes "the non-parolable portion of an aggregated sentence," see infra for detailed discussion of this matter,[11] Petitioner's latter contention is plainly erroneous.  In fact, Petitioner himself asserts that "each sentence should be served as it was imposed."  Pet. at 13.  Since Petitioner's non-parolable sentence was imposed *to be served* third, Petitioner certainly cannot "re-write" the sentencing order to have that sentence served first.[12]  The Fourth Circuit, in a non-precedential opinion, reinforced this concept:

> [A pertinent decision by the] Supreme Court [was] rendered . . . in United States v. Gonzales, 520 U.S. 1 (1997).  In Gonzales, the Court held that [non-parolable federal] sentences must be served consecutively to state [parolable] sentences.  In reaching its conclusion, the Court also ruled that sentencing courts are not bound to order defendants to serve [non-parolable] sentences before serving [parolable] sentences.  See id. at 7-8.  . . .  In response to Gonzales, . . . the BOP in 1998 issued a revised Operations Memorandum *retroactively* mandating

---

[11] The Court examines Petitioner's related contention that, upon expiration of his non-parolable portion of the aggregated sentence, an inmate "[s]hould be eligible to see the [USPC] and obtain release date," Pet. at 6, as part of the same discussion.

[12] Respondent arrives at the same conclusion on the basis of 18 U.S.C. § 3568, the predecessor of § 3585(a), which provides that a sentence  cannot be computed as commencing before the date it was imposed.  See Ans. at 18.

that  prisoners serve their sentences in the sequence
specified by the judgment and commitment order.

See Luskin, 16 Fed. Appx. at 258 (applying Gonzales to
consecutive parolable and non-parolable, all federal-only,
sentences).

Petitioner's final contention argues that, "[s]ince
parolable and non-parolable sentences are aggregated [into one
sentence], the [USPC should] credit [the period the inmate served
under his non-parolable portion] to the parolable" portion, and
Petitioner's 35 years, as adjusted, should be credited against
one-third of the aggregated sum of Petitioner's parolable
sentences, see Pet. at 6, 15-18.  Petitioner effectively requests
this Court to "re-write" Petitioner's sentencing orders with
regard to all of his parolable sentences and declare that these
parolable sentences should run *concurrently* rather than
*consecutively* to Petitioner's non-parolable sentence (since only
such "re-writing" would give Petitioner the result he desires to
obtain).  See Traslavina, 2004 U.S. App. LEXIS 2212, at *8.

Since it appears that this last contention is squarely made
on the basis of Petitioner's peculiar reading of Chatman-Bey, 797
F.2d 987; Thomas, 961 F.2d 612; and Lyons, 303 F.3d 285, see Pet.
at 6, 15-18, and since Respondent's legal argument is effectively
limited to Chatman-Bey and Lyons, see Ans. at 19-25, this Court

examines <u>Chatman-Bey</u> and <u>Thomas</u> in order to detect what effect, if any, they may have on the issues at bar.[13]

The case upon which Petitioner primarily relies for the purposes of seeking credit for his non-parolable sentence against one-third of the aggregated sum of Petitioner's parolable sentences is <u>Chatman-Bey</u>, 797 F.2d 987.  <u>Chatman-Bey</u> concerned an interaction of federal and District of Columbia statutes bearing on the parole eligibility of persons serving consecutive sentences under both the United States Code and the District of Columbia Code (hereinafter D.C. Code), and the circumstances and holding of <u>Chatman-Bey</u> are as unique as the political status of the District of Columbia itself, <u>see id.</u> at 991 ("We note . . . that holding . . . in . . . <u>Chatman-Bey</u> hardly makes this District a mecca for all manner of federal prisoner complaints. Chatman-Bey's case is singularly suitable for adjudication here"), since--unlike any state code--the D.C. Code permits the United States Attorney General to assign D.C. Code offenders to serve their sentences in federal institutions rather than in institutions maintained by the District.  <u>See id.</u> at 987-90, 992-

---

[13] The Court agrees with Respondent's argument that the holding in <u>Lyons</u> has no relevance to Petitioner's case because (a) the court in <u>Lyons</u> created a class of prisoners of which Petitioner is not a member, and (b) the claims in <u>Lyons</u> concerned an upward deviation from the guideline range; that issue is not present in Petitioner's case.  <u>See</u> Ans. at 24-25 (comparing the circumstances of prisoners in <u>Lyons</u>, 303 F.3d 285, to those of Petitioner).

93.  Since § 4205(a) provided for parole eligibility under the
One-third Rule and, at a maximum, in 10 years, while the D.C.
Code rendered a prisoner eligible for parole upon completion of
the minimum sentence imposed, matters get further complicated
when these sentence must be "aggregated" for the purpose of
calculating parole eligibility.  Id. 992-94.  The "aggregation"
used in such unique scenario is "partial" rather than "complete"
(since, had it been complete, the USPC would simply add the D.C.
and U.S. sentences, and then apply only one set of parole
regulations to the combined term), because the USPC must apply
D.C. parole regulations to the D.C. portion of sentence while
federal parole rules to the federal portion, see 28 C.F.R. §
2.66(b), in order to accord due respect to both sets of parole
provisions while, at the same time, treating the total sentence
as an "aggregated" term.  See  Thomas, 961 F.2d at 615 (providing
detailed analysis of Chatman-Bey).  Dealing solely with *parolable*
federal sentences and a D.C. sentence which provided for a
mandatory minimum term, the Chatman-Bey court devised the
following rule: "All [D.C. and federal sentences] should be added
together to arrive at a single aggregate sentence.  But[,]
because the D.C. [sentences are not subject to the One-third
Rule,] the 10-year cap indicated in . . . § 4205(a) would not be
dispositive when a D.C. Code sentence is implicated.  Rather, the
prisoner would remain ineligible for parole until he completed

service of time equivalent to the minimum D.C. Code sentence or
sentences." Chatman-Bey, 797 F.2d at 994.

Petitioner relies on the Chatman-Bey holding in order to:
(a) equate his non-parolable sentence of 35 years with a D.C.
sentence (since a D.C. sentence is subject to a minimum term of
imprisonment); and (b) suggest that the Chatman-Bey regime allows
Petitioner to "credit" the time he is serving under his non-
parolable sentence against the one-third of his aggregated
parolable sentences (which Petitioner analogizes to similar
parolable federal sentences in Chatman-Bey). Pet. at 15-16.
Respondent, while properly pointing out that Chatman-Bey (a)
involved *parolable* sentences only, and (2) involved two different
parole schemes, see Ans. at 19, nonetheless omits to observe the
two key reasons why Petitioner's reliance on Chatman-Bey is
unwarranted, namely: (1) nothing in the language of the
Chatman-Bey decision indicates that a prisoner serving
consecutive D.C. and federal sentences would, upon obtaining
parole determinations with respect to each type of sentence, be
able to "credit" the time served under one type against the time
to be served under another, see Chatman-Bey, 797 F.2d at 991;[14]

_____

[14] Conversely, the Chatman-Bey court unambiguously indicated
that if, upon getting parole decisions with respect to his U.S.
and D.C. sentences, a prisoner is "paroled" on both, such
"parole" merely indicates that the prisoner is deemed finished
with serving one of these "paroled" sentences and must now start
serving the other.

and (2) the essence of the <u>Chatman-Bey</u> decision is the court's prudential determination allowing the USPC to hold one hearing addressing parolability of both types of sentences, <u>see</u> <u>Thomas</u>, 961 F.2d at 617 ("Does this mean that the Commission must apply the D.C. parole suitability regulations to the D.C. portion (while simultaneously applying the federal parole suitability regulations to the federal portion) on the initial parole eligibility date? . . . [T]he answer is yes"), and do so at the "latest" date, that is, the date when the USPC is able to render the decision with respect to all sentences, including those that "matured for parole considerations" prior to the date, as well as those that have just so matured on that very date.[15]   See

---

Parole eligibility, after all, simply means consideration for release.  Such "eligibility" does not entitle the prisoner to release even one day earlier than his full term or aggregate consecutive terms.  <u>See</u> <u>Goode v. Markley</u>, 195 U.S. App. D.C. 391, 603 F.2d 973, 977 n.5 (D.C. Cir. 1979) (eligibility for parole "in no way means [one] would be entitled to release").  Parole eligibility is thus unlike good-time credit, which generally does operate to reduce the term of a sentence.  <u>See</u> <u>Williams v. Ward</u>, 56 F.2d 1143, 1150-52 (2d Cir.) (request for new parole hearing held a remedy available outside habeas corpus), <u>cert.</u> <u>dismissed</u>, 434 U.S. 944.  <u>See also</u> <u>Parole Commission</u>, 793 F.2d at 343-55 & n.48.

<u>Chatman-Bey</u>, 797 F.2d at 991.

[15] To illustrate, if a prisoner is eligible for parole, say, in 10 years under his federal sentences but, under his consecutive D.C. sentence, he is eligible for parole in, say, 15 years, then (1) the prisoner is afforded only one parole hearing in 15 years, when the USPC could render its decision with regard

*Chatman-Bey*, 797 F.2d at 991.  In sum, the holding of *Chatman-Bey* undercuts Petitioner's contentions and lends conceptual support to BOP's model since the BOP (a) insists on Petitioner serving his non-parolable sentence, plus one-third of his parolable ones prior to qualifying for a parole hearing, and (b) aspired to assign Petitioner a single parole hearing at the time when *all* Petitioner's sentences are mature for consideration.

Moreover, the prudential approach of *Chatman-Bey* is further buttressed by considerations expressly discussed in *Thomas*, 961 F.2d 612, a case upon which Petitioner relies, *see* Pet. at 16, and Respondent ignores.  The *Thomas* court observed that,

> [even if the court] were . . . to find that
> [petitioner] was entitled to a [parole] hearing [on an
> earlier date with respect to one of his sentences and]
> order the [USPC] to hold [such] hearing retroactive to
> that date, with retroactive annual rehearings through
> the present, [and even if] this solution would appear
> to accord [petitioner] some incremental  benefit, [the
> court] decline[s] to impose it upon the [USPC.
> Petitioner] must . . . remain in prison [at least]
> until [he serves all  his parolable, plus all non-
> parolable terms], even if . . . he would be considered
> suitable for earlier release [under some sentences
> sooner].  Due regard for the federal scheme precludes
> [the court] from requiring the [USPC to hold a parole
> hearing with regard to certain sentences] while the
> prisoner has yet to serve out [other sentences].

*Thomas*, 961 F.2d at 618.[16]

---

to both types of sentences, and (2) if the prisoner is "paroled"
on both sentences, his D.C. term is deemed completed so the
prisoner could proceed with serving his 10 year federal term.

[16] The prudential considerations set forth in *Chatman-Bey*
and *Thomas*, 961 F.2d 612, are further supported by the fact that,

On the basis of foregoing analysis, this Court concludes than neither Chatman-Bey, 797 F.2d 987, nor Thomas, 961 F.2d 612, or Lyons, 303 F.3d 285, lends support to the claims set forth by Petitioner.  With that, the Court turns to three assertions by Respondent which this Court finds discombobulating.

First, the Court finds no support for BOP's conclusion that Petitioner was denied parole with respect to Petitioner's second (parolable) sentence (of 3 years) simply because the USPC voided the opening of Petitioner's case until a much later date upon learning about the imposition of Petitioner's third and fourth sentences.  See Ans. at 7-8, Exs. USPC-2 and USPC-3.  The sole fact that the USPC delayed its finding in no event indicates that the USPC actually made an unfavorable finding; it appears that the BOP effectively usurped USPC's powers by making an unwarranted interpretation of USPC's decision to postpone Petitioner's parole hearing.

Respondent does not clarify how the BOP arrived at its conclusion with respect to Petitioner's sentence, leaving this Court to guess BOP's reasoning.  It appears that BOP's

---

in order to calculate the parole eligibility date of prisoners, the USPC must consider all relevant and reasonably available information.  See 18 U.S.C.S. § 4207.  Additionally, the USPC's regulations specifically provide that it may reopen a parole decision if it receives new and significant information that could adversely affect the timing of an inmate's release from prison.  See 28 C.F.R. § 2.28(f) (1992). Clearly, USPC's statutory and regulatory tasks would be less burdensome if the USPC is enabled to evaluate the entire picture in perspective.

determination could have been based on the logic analogous to
that underlying Respondent's assertions with respect to
Petitioner's Appeal of First Denial, supra.  Specifically,
addressing the Appeal of First Denial, Respondent maintains that
Petitioner could not have been prejudiced by an assumption that
the parole hearing was unnecessary since Petitioner would not be
granted parole anyway, see Response at 7 ("[Petitioner] cannot .
. . seriously contend that he has been actually prejudiced by not
receiving a . . . hearing [since] no rational decisionmaker could
have concluded then that [Petitioner's] commission of a second
offense . . . had made him an even better parole risk").  If
BOP's conclusion with respect to Petitioner's second (parolable)
sentence (of 3 years) was based on such logic, the BOP clearly
erred.

> Parole *eligibility* is different from parole
> *suitability*.  The fact that a prisoner is eligible for
> parole means only that the paroling authority must
> consider his application for parole under the relevant
> parole guidelines.  The paroling authority's ultimate
> decision is a matter of parole suitability (i.e.,
> whether the prisoner is actually entitled to release .
> . . ).  See, e.g., United States v. Fountain, 840 F.2d
> 509, 523 (7th Cir. 1988), cert. denied, 488 U.S. 982
> (1989).

Thomas, 961 F.2d at 614, n. 3 (emphasis supplied). Since there is
no evidence on record indicating that the USPC did or did *not*
parole Petitioner from his second (parolable) sentence (of 3
years), this Court finds that this sentence is still subject to
parole.

Equally unavailing is Respondent's other contention, namely, that one-third of Petitioner's fourth (parolable) sentence (of 5 years) should be credited against the time Petitioner served under his first (parolable yet unparoled) and second (parolable) sentences.  See Ans. at 15-16.  Providing mathematical calculations only, Respondent cites no authority in support of such crediting, and this Court finds none either, since Respondent, much in accord with the concept advocated by Petitioner under Petitioner's reading of Chatman-Bey, "re-wrote" Petitioner's sentencing order making his fourth sentence to run concurrently--rather than consecutively--to Petitioner's first and second sentences.[17]  Because Petitioner's fourth sentence is to be served *consecutively* to Petitioner's first, second and third sentences, the BOP had no statutory or precedential support for aggregating Petitioner's sentences in such fashion that one-third of his fourth sentence would be credited against the time Petitioner served, is serving or will be serving under Petitioner's preceding sentences, see Traslavina, 2004 U.S. App. LEXIS 2212, at *8 ("To [do so] would . . . violate[] the sentencing court's explicit order that the [one] term be served

---

[17] While Respondent expresses Respondent's astonishment by Petitioner's "impression that . . . he would be immediately eligible for parole on the . . . parolable sentences" after serving the non-parolable one, see Ans. at 17-18, it appears to this Court that Petitioner's model with respect to his series of parolable sentences mimicked the very model employed by the BOP with respect to Petitioner's fourth sentence.

consecutively to the [other] sentence"). A joint reading of Sections 4205(a) and 3584(c) unambiguously provided for parole eligibility after service of one-third of the prisoner's *fully aggregated* parolable terms rather than for crediting one-third of a future parolable sentence against the time the prisoner already served under another. See 18 U.S.C. § 4205(a).

On the basis of foregoing analysis, this Court concludes than the BOP unreasonably applied the pertinent statutory mandates by concluding that: (1) Petitioner was denied parole with respect to Petitioner's second (parolable) sentence (of 3 years), and (2) one-third of Petitioner's fourth (parolable) sentence (of 5 years) could be credited against the time Petitioner served under any other sentence imposed and, therefore, BOP's decision should not be upheld.

So finding, the Court finally turns to statutory interpretation which the Court believes is applicable to Petitioner's aggregated sum of alternating parolable and non-parolable sentences.[18]

---

[18] The discussion of this matter would be incomplete without noticing that at least one court concluded that parolable and non-parolable sentences simply cannot be aggregated. See Broadwell v. Guzik, 95-02165 (W.D. Tenn. Aug. 16, 1996), aff'd, 1996 U.S. App. LEXIS 26155 (6th Cir. Sept. 27, 1996). The petitioner in Broadwell was sentenced to a total of 40 years of imprisonment, apparently comprised of various parolable sentences and one non-parolable one, although it is unclear whether those sentences were alternated. See id. 1996 U.S. App. LEXIS 26155, at 2. The District Court dismissed the petition sua sponte, and the Sixth Circuit affirmed observing that "[p]ursuant to Bureau

The provisions at issue are: (1) the One-third Rule set forth by Sections 4205(a), and (2) the aggregation mandate ensuing from Section 3584(c).

For the purposes of Sections 4205(a), each *parolable* sentence could be viewed as a sum of one-third of that sentence[19] (subject to mandatory service and presenting, qualitatively, a "non-parolable component") and two-thirds of the sentence (presenting, qualitatively, a "parolable component").  See 18 U.S.C. § 4205(a).  That is why the BOP, when aggregating consecutive *parolable* sentences under Section 3584(c), adds all

_____

of Prisons policy, non-parolable offenses are excluded in the calculation of petitioner's parole eligibility date because otherwise petitioner would be granted an earlier parole eligibility date by virtue of [packing a non-parolable sentence into a set] the parolable sentence."  Id. at *3, (relying on 18 U.S.C. § 4205).  Taking notice of the Sixth Circuit's concerns, this Court, nonetheless, finds that aggregation of parolable and non-parolable sentences is not barred by § 4205, see, e.g., Traslavina, 2004 U.S. App. LEXIS 2212, at *8, as long as the calculative model, as applied to the aggregated term, does not allow "petitioner [to] be granted an earlier parole eligibility date by virtue of [adding] the parolable sentence" to a non-parolable one.  Accord Deborah Drucker Deutschmann, Stephen K. Benjamin, Accurately Advising Clients on Parole Eligibility, 12 S. Carolina Lawyer 26, 30 (2000) ("If a person receives sentences that are both parolable and non-parolable, the person will not be considered for parole until the parole eligibility period of the parolable sentences is met and all of the non-parolable offenses are satisfied").

[19] From this point on, and through the remainder of this Opinion, the Court disposes of the qualifier "as adjusted."  The reader is invited to read this qualifier in every reference to parolable and non-parolable sentence, since "good time credits" and other adjustments are applicable to both types of sentences.

"non-parolable components" to arrive at the date when the inmate becomes parole eligible.

Applying the very same logic to a *non-parolable* sentence, this Court views each non-parolable sentence as a sum of "100% of non-parolable component" and "zero of parolable component." Finally, the Court holds that a *parolable* sentence with respect to which parole was conclusively denied is substantively identical to a non-parolable sentence of the same length since a conclusive parole determination transforms the sum of "non-parolable component" equal to one-third of the sentence and "parolable component" equal to two-thirds of the sentence into the sum of "non-parolable component" equal to 100% of the sentence and "parolable component" equal to 0% of the sentence; the distinction between a parolable sentence with respect to which parole was conclusively denied and a non-parolable sentence becomes purely semantic.

Having so established, the Court now utilizes these definitions under the aggregation mandate of Section 3584(c), as applied to Petitioner's series of alternating parolable and non-parolable sentences.

1.  Petitioner's first (parolable) sentence of 5 years was reviewed by the USPC, and parole was conclusively denied. See Ans. at 7, Exs. USPC-1, USPC-2,; Response, Exs. USCP-C and USPC-D.  Hence, upon that USPC's finding, Petitioner's

28

first sentence became the sum of 5 years of Non-parolable
Component and zero of Parolable Component.[20]

2.    The USPC did not reach any decision with regard to
      Petitioner's second (parolable) sentence (of 3 years).  <u>See</u>
      Ans. at 14-15.  Therefore, this sentence exists as the sum
      of 1 year of Non-parolable Component (one-third of 3 years)
      and 2 years of Parolable Component (two-thirds of 3 years).

3.    Since Petitioner's third sentence was non-parolable, it was,
      <u>ab</u> <u>initio</u>, fixed as the sum of 35 years of Non-parolable
      Component and zero of Parolable Component.

4.    Finally, Petitioner's fourth (parolable) sentence of 5 years
      remains as the sum of 1 year and 8 months of Non-parolable
      Component (one-third of 5 years) and 3 years and 4 months of
      Parolable Component (two-thirds of 5 years).

Adding all Non-parolable Components together, that is, 5
years plus 1 year, plus 35 years, plus 1 year and 8 months, this
Court arrives at the Non-parolable Component of Petitioner's
aggregated sentence equal to 42 years and 8 months, as adjusted,
the figure satisfying the requirements set forth in both Section

---

[20] Since the USPC already made a finding with respect to
this first sentence, imposition of Petitioner's later sentences
cannot change that fact.  Hence, Petitioner cannot have a "second
bite of the apple" with respect to this already made
determination on the grounds of aggregation mandate of Section
3584(c).  Finding otherwise would confer a peculiar benefit upon
inmates who commit new offenses in order to have their parole
findings made anew.

4205(a) and Section 3584(c).[21]  And, under the prudential
considerations set forth in <u>Chatman-Bey</u> and <u>Thomas</u>, Petitioner's
first parole eligibility date is the sum of (a) Petitioner's
original date of incarceration, and (b) the period of 42 years
and 8 months, as adjusted.[22]  This matter, hence, should be
remanded to the BOP so the BOP would recalculate the date of
Petitioner's parole eligibility in accordance with the model
provided above.[23]  See <u>Bridge v. United States Parole Comm.</u>, 981

_____

[21] Petitioner's issue of whether a non-parolable sentence
could be "sandwiched" between parolable ones is not an issue at
all under the regime set forth in this Opinion: the process of
aggregation for _administrative/calculating_ purposes has no
bearing on the fact that each sentence should be served as it was
imposed, pursuant to <u>Gonzales</u>, 520 U.S. 1.

[22] The Court's calculations (adjustments factored out) set
Petitioner's parole eligibility date about _four months sooner_
than under the BOP's model (since the BOP's model (a) unduly adds
2 years to the proper parole eligibility period by finding that
Petitioner was denied parole with respect to his second sentence,
but (b) improperly deducts 1 year and 8 months by crediting one-
third of Petitioner's fourth sentence against his first and
second sentences).  The Court notes, however, that the very fact
of BOP's calculative error did not violate Petitioner's rights
since, as of the date of this Opinion and accompanying Order,
Petitioner has not become parole eligible.  <u>Cf.</u> <u>United States v.
Spiers</u>, 82 F.3d 1274 (3d Cir. 1996)  (failure to determine the
exact calendar date upon which a consecutive sentence was to
begin does not deny due process).

[23] The Court acknowledges that, in his final bid for what
could be effectively qualified as reduction of his sentences,
Petitioner raised an entirely new assertion in his Traverse,
namely, that he USPC "violated the spirit, if not the letter, of
[Petitioner's] plea agreement" by considering certain information
during the USPC'S determination of severity level of Petitioner's
offenses.  <u>See</u> Traverse at 3, 6.  The Court notes that this claim
is procedurally invalid, since "[a] Traverse is not the proper
pleading to raise additional grounds for relief[;] . . .

F.2d 97, 105 (3d Cir. 1992)  ("A corollary to this tenet of administrative law is that the appropriate judicial remedy when an agency exceeds its discretion is a remand to the agency for further proceedings consistent with the court's opinion.  See Federal Power Comm. v. Idaho Power Co., 344 U.S. 17, 20 (1952).  'The function of the reviewing court ends when an error of law is laid bare.  At that point the matter once more goes to the [agency] for reconsideration.'  Id.  [A] court 'usurp[s] an administrative function' by specifying the remedy for the legal error instead of remanding that decision to the agency").  The Court thus requires, upon remand, that the BOP recalculate the date of Petitioner's parole eligibility in a manner not inconsistent with this Opinion, within thirty (30) days.

---

additional claims . . . should be presented in an amended petition," United States v. Barrett, 178 F.3d 34, 45 (1st Cir. 1999), cert. denied, 528 U.S. 1176 (2000) (quoting Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994), and citing United States v. Zuno-Arce, 25 F. Supp. 2d 1087, 1113 (C.D. Cal. 1998)), and lacks merit substantively.  Respondent is entirely correct in its assertion that the USPC cannot be bound by the "spirit" of a plea agreement,  and Petitioner's subjective beliefs with regard to that "spirit" are of no consequence.  See Reply at 2 (citing Arias v. United States Parole Comm., 648 F.2d 196 (3d Cir. 1981), as well as Augustine v. Brewer, 821 F.2d 365 (7th Cir. 1987); United States v. Plain, 748 F.2d 620 (11th Cir. 1984); Robinson v. Hadden, 723 F.2d 59 (10th Cir. 1983), cert. denied, 466 U.S. 906 (1984)).

## CONCLUSION

For the foregoing reasons, Petitioner's Petition for a Writ of Habeas Corpus is remanded to the BOP so the BOP would recalculate the date of Petitioner's parole eligibility in a manner not inconsistent with this Opinion, within thirty (30) days of entry of this Opinion and the accompanying Order.  The docket will be closed, but the Court will preserve continuing jurisdiction if Petitioner contests the Respondent's compliance with this Order.  If so, Petitioner's objection to the BOP's recalculation after remand shall be filed with the Clerk of this Court, and served upon Respondent within thirty (30) days of his receipt of the BOP's determination.

An appropriate Order accompanies this Opinion.


**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

Date:    **August 2, 2006**

32